# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In Re: | Case No. 1:15-bk-11772 |
| BRADLEY BLAINE SANDONA | Chapter 13 |
| Debtor(s) | Honorable Jack B. Schmetterer |

## NOTICE OF MOTION

To:   Ms. Marianne Lake
      JPMorgan Chase Bank, N.A.
      1111 Polaris Parkway
      Columbus, Ohio 43240

   PLEASE TAKE NOTICE that on November 14, 2018 at 10:00 a.m., the undersigned will appear before the Honorable Jack B. Schmetterer at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Courtroom 682, Chicago, Illinois and will then and there present **DEBTOR'S MOTION FOR AN ORDER OF CONTEMPT AGAINST JPMORGAN CHASE BANK, N.A. AND FOR THE IMPOSITION OF SANCTIONS FOR THE WILLFUL VIOLATION OF THE ORDER CONFIRMING PLAN AND ORDER OF DISCHARGE,** a copy of which is hereby served upon you.

Dated: October 15, 2018                    */s/ Joseph Scott Davidson*

                                           Joseph Scott Davidson
                                           Mohammed Omar Badwan
                                           **SULAIMAN LAW GROUP, LTD.**
                                           2500 South Highland Avenue
                                           Suite 200
                                           Lombard, Illinois 60148
                                           +1 630-575-8181
                                           jdavidson@sulaimanlaw.com
                                           mbadwan@sulaimanlaw.com

                                           *Counsel for Bradley Blaine Sandona*

**CERTIFICATE OF SERVICE**

I, Joseph Scott Davidson, an attorney, hereby certify that on October 15, 2018, **DEBTOR'S MOTION FOR AN ORDER OF CONTEMPT AGAINST JPMORGAN CHASE BANK, N.A. AND FOR THE IMPOSITION OF SANCTIONS FOR THE WILLFUL VIOLATION OF THE ORDER CONFIRMING PLAN AND ORDER OF DISCHARGE PLAN** was filed with the Clerk of the Court of the United States Bankruptcy Court for the Northern District of Illinois by using the CM/ECF system. I have mailed this document by United States Postal Service Certified Mail, postage prepaid to:

Ms. Marianne Lake
JPMorgan Chase Bank, N.A.
1111 Polaris Parkway
Columbus, Ohio 43240

*/s/ Joseph Scott Davidson*

Joseph Scott Davidson
Mohammed Omar Badwan
**SULAIMAN LAW GROUP, LTD.**
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
+1 630-575-8181
jdavidson@sulaimanlaw.com
mbadwan@sulaimanlaw.com

*Counsel for Bradley Blaine Sandona*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In Re: | Case No. 1:15-bk-11772 |
| BRADLEY BLAINE SANDONA | Chapter 13 |
| | Honorable Jack B. Schmetterer |
| Debtor(s) | |

**MOTION FOR AN ORDER OF CONTEMPT AGAINST TCF NATIONAL BANK AND FOR THE IMPOSITION OF SANCTIONS FOR THE WILLFUL VIOLATIONOF THE ORDER CONFIRMING PLAN AND ORDER OF DISCHARGE**

BRADLEY BLAINE SANDONA (the "Movant") through counsel, SULAIMAN LAW GROUP, LTD., moves for an order of contempt against JPMORGAN CHASE BANK, N.A. (the "Respondent"), and for the imposition of sanctions for the willful violations(s) of the Order Confirming Plan and Order of Discharge, and in support thereof, state as follows:

## BACKGROUND AND JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. On April 11, 2012, the Movant executed a mortgage (the "Mortgage") in favor of the Respondent

3. The Mortgage secured the purchase of the Movant's real property located at 1275 East Baldwin Lane, Unit 401, Palatine, Illinois 60074 (the "Property").

4. The Mortgage secured the repayment of the indebtedness evidenced by a promissory note in the amount of $123,397.00 (the "Note").

5. On March 31, 2015, the Movant initiated a bankruptcy case in the Northern District of Illinois by filing a petition for relief under Chapter 13 of the Bankruptcy Code [Doc. 1].

6. Simultaneously with the voluntary petition, the Movant filed his Chapter 13 plan, which was subsequently amended on July 28, 2015. Each plan provided identical treatment of Respondent's claim, which was specifically identified in the following provision of in **Special Terms** *[as provided in Paragraph G]:*

> "[Movant] is surrendering real property located at 1275 East Baldwin Lane, Unit 401, Palatine, Illinois 60074 to JPMorgan Chase Bank, N.A. in full satisfaction of its claims. Pursuant to 11 U.S.C. § 1322(b)(9), legal title to [1275 East Baldwin Lane, Unit 401, Palatine, Illinois 60074] shall vest in [Respondent] upon confirmation of [Movant's] Chapter 13 Plan. The [Order Confirming Plan] shall constitute a deed of conveyance of [1275 East Baldwin Lane, Unit 401, Palatine, Illinois 60074] when recorded with Cook County Recorder of Deeds."

[Doc. 2] and [Doc. 21].

7. On April 8, 2015, Codilis & Associates, P.C. filed an Entry of Appearance and Request for Notice on behalf of the Respondent [Doc. 11].

8. At no time did the Respondent object to the Movant's Original or Modified Chapter 13 Plan.

9. On September 2, 2015, this Court confirmed the Movant's July 28, 2015 Chapter 13 Plan [Doc. 26].

10. On September 4, 2015, this Court's Order Confirming Plan was recorded with the Cook County Recorder of Deeds.

11. At no time did the Respondent seek to appeal or vacate this Court's Order Confirming Plan.

12. Following the entry of this Court's Order Confirming Plan, the Movant routinely started to receive written communications from Chase regarding the Property.

13. These written communications included monthly statements relating to the existence of the underlying debt as well as other communications. *See* Group Exhibit A.

14. In response to these communications, on July 19, 2017, Movant's counsel demanded – in writing – that the Respondent cease such activities. *See* Exhibit B.

15. Movant's counsel's demand did nothing to deter the Respondent from continuing its pattern of sending periodic written communications to Movant regarding the Property.

16. On July 31, 2017, this Court entered an Order of Discharge for the benefit of the Movant under 11 U.S.C. § 1328(a) [Doc. 36].

17. The Movant's Order of Discharge removed, *inter alia*, any personal liability on the indebtedness owed to the Respondent and secured by the Property. *See Id.*

18. The Respondent was served by first class mail and by electronic transmission with a copy of that discharge order by the Bankruptcy Noticing Center. [Doc. 37]

19. No debt owing by the Movant to the Respondent was subsequently excepted from the scope of that discharge order.

20. From March 7, 2017 to present-day, the Movant has received no less than eleven (11) demands for payment from the Respondent related to the Property.

21. The Respondent's failure to comply with the Movant's confirmed Chapter 13 plan and the Order of Discharge has caused the Movant to experience anxiety, confusion, and shock consistent with believing that filing for relief under chapter 13 of the Bankruptcy Code was futile, and that this pattern of harassing behavior would, in fact, continue.

22. Due to the continuing actions of the Respondent, the Movant has not received the fresh start contemplated by the Bankruptcy Code.

## **LEGAL STANDARD**

23. "Courts have inherent and statutory powers to punish a party that fails to comply with the terms of their orders, and to coerce compliance with such orders." *Baldwin Piano, Inc. v. Deutsche Wurlitzer, GmbH*, 2004 U.S. Dist. LEXIS 11145, 2004 WL 1323940 (N.D. Ill. 2004) (citing *United States v. Dowell*, 257 F.3d 694, 698 (7th Cir. 2001)).

24. The court's authority to enforce its orders, including a confirmation order or order of discharge, under § 105(a) must necessarily include the ability to award fees to a debtor who is forced to bring an action, and thus incur attorney's fees, to compel a creditor's compliance with the binding plan and the order confirming the plan or discharge injunction.

25. Despite earlier cases to the contrary, the weight of authority from other circuits now recognizes that the bankruptcy court has authority to enforce its own orders in core proceedings by the power of both civil and criminal contempt. *See Eck v. Dodge Chemical Company (In re Power Recovery Systems, Inc.)*, 950 F.2d 798, 802 (1st Cir. 1991) ("It is well settled that the bankruptcy courts are vested with contempt powers" – embraced the contempt power in general and was not limited to civil contempt.)

26. Punitive sanctions, though imposed as punishment after the fact, nonetheless enforce court orders by their very availability and the threat of their imposition for violations of such orders.

27. To the extent that the Court's authority herein rests solely on § 105(a), this matter may be viewed as a contempt proceeding, partly civil and, to the extent it involves punitive damages, partly criminal.

**ARGUMENT**

**I.    The Respondent willfully violated this Court's Order Confirming Plan.**

28.    The commencement of a case under Chapter 13 of the Bankruptcy Code creates an estate.

29.    Such estate is comprised of all legal and equitable interests of the Movant in property as of the commencement of the case and certain property of the kind specified that the Movant acquires after the commencement of the case but before the case is closed, converted or dismissed.  11 U.S.C. §§ 541, 1306.

30.    The confirmation of a plan vests all of the property of the estate in the Movant, free and clear of any claim or interest of any creditor provided for by the plan.  11 U.S.C. § 1327.

31.    The contents of a Chapter 13 bankruptcy plan are regulated by § 1322.  Subsection (a), which is not at issue here, dictates what a plan "shall provide."  11 U.S.C. § 1322(a).

32.    Subsection (b) includes a list of permissive terms that "may" be included.  11 U.S.C. § 1322(b).

33.    Subsection (b) specifies "the plan may provide for the vesting of property of the estate, on confirmation of the plan, in the Movant or in any other entity."  11 U.S.C. § 1322(b)(9).

34.    The confirmation of a Chapter 13 bankruptcy plan is governed by 11 U.S.C. § 1325.  *In re Andrews*, 49 F.3d 1404, 1407 (9th Cir. 1995).

35.    The bankruptcy court "shall confirm a plan" only if, with respect to each allowed secured claim, one of the following three requirements are satisfied: (1) "the holder of such claim has accepted the plan;" (2) the Movant's payments to the creditor comply with certain standards and the creditor retains its lien; or (3) "the Movant surrendered the property securing such claim to such holder."  11 U.S.C. § 1325(a)(5).

36. These requirements are stated in the disjunctive, so the plan need only satisfy one of the three tests.

37. The Bankruptcy Code does not define the terms "surrender" or "vesting" for the purposes of Chapter 13.

38. Nonetheless, "surrender" has been interpreted in this context as the movant's relinquishment of his or her right to the property at issue, such that the secured creditor is free to accept or reject that collateral. *In re Rosa*, 495 B.R. 522, 523 (Bankr. D. Haw. 2013); *see also In re Arsenault*, 456 B.R. 627, 629-30 (Bankr. S.D.Ga. 2011) ("surrender of encumbered property leaves the secured creditor in control of the exercise of its remedies").

39. Unlike surrender, "vesting … includes a present transfer of ownership." *In re Rosa*, 495 B.R. at 523, 524; *see also In re Gonzales*, 512 B.R. 255, 259-61 (Bankr. C.D.Cal. 2014) (although "there is very little case law discussing the meaning and impact of the vesting," it generally allows the Movant or other specified party, upon plan confirmation, to "take whatever property rights [the Movant] had in the property when the case commenced").

40. Accordingly, vesting is the mechanism that, in the context of real property, transfers title.

40. A mortgagor ordinarily cannot compel a mortgagee to foreclose, and a mortgagor cannot convey a property to the mortgagee unless the mortgagee accepts the conveyance.

41. This poses a serious problem for chapter 13 debtors who own property covered by an owners' association, such as a condominium unit, because as a matter of law, a debtor's personal liability for association dues continues postpetition so long as he maintains an equitable, legal, or possessory interest in the property and is unaffected by his discharge." *Foster v. Double R. Ranch Assoc.* (*In re Foster*), 435 B.R. 650 (B.A.P. 9th Cir. 2010).

42. The Movant's confirmed Chapter 13 plan provides that he will "surrender" the Property to the Respondent

43. Unfortunately, however, to "surrender" means only that the Movant will make the property available for the secured creditor – should it choose to do so – exercise its rights against the collateral. *Pratt v. General Motors Acceptance Corp.* (*In re Pratt*), 462 F.3d 14, 18-19 (1st Cir. 2006); *In re Gollnitz*, 456, 456 B.R. 733, 736 (Bankr. W.D.N.Y. 2011) ("[T]ransfer requires both the surrender of an interest and its acceptance.")

44. Conversely, the Movant's confirmed Chapter 13 plan also provides:

Pursuant to 11 U.S.C. § 1322(b)(9), legal title to [1275 East Baldwin Lane, Unit 401, Palatine, Illinois 60074] shall vest in [Respondent] upon confirmation of [Movant's] Chapter 13 Plan. The [Order Confirming Plan] shall constitute a deed of conveyance of [1275 East Baldwin Lane, Unit 401, Palatine, Illinois 60074] when recorded with Cook County Recorder of Deeds."

45. The Movant did not merely surrender the Property; the Movant also proposed that title be vested in the Respondent. The Bankruptcy Code specifically authorizes such a provision:

[T]he plan may … provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the movant or in any other entity….

46. The Respondent failed to object to the Movant's plan.

47. The law does not establish a method for a secured creditor to formally accept a plan. 11 U.S.C. § 1325(a)(5)(A); Fed. R. Bankr. P. 3015 and 3018.

48. The overwhelming majority of courts hold that a secured creditor's failure to object may amount to acceptance of the plan, or at the least imply acceptance of the plan. *See Andrews v. Loheit* (*In re Andrews*), 49 F.3d 1404, 1409 (9th Cir. 1995) ("Here, § 1325(a)(5) is fulfilled because subsection (A) was satisfied when the holders of the secured claims failed to object. In most instances, failure to object translates into acceptance of the plan by the secured creditor."); *In re Szostek*, 886 F.2d 1405, 1413 (3rd Cir. 1989) ("The general rule is that the acceptance of the

plan by a secured creditor can be inferred by the absence of a timely objection."); *In re James*, 260 B.R. 498, 503 (Bankr. D. Idaho 201) ("The case law makes clear that if the holder of an allowed secured claim provided for by a plan fails to object to confirmation of the plan, Section 1325(a)(5)(A) is satisfied …. [N]o objection has been received from the holders of any allowed secured claims, and therefore Section 1325(a)(5)(A) has been satisfied.")

49. It is reasonable to infer acceptance from lack of an objection if the secured creditor has received adequate notice of the plan.

50. The clerk of court must give notice "by mail" to all creditors and other parties of "the time fixed … for filing objections and the hearing to consider confirmation of a … chapter 13 plan." Fed. R. Bankr. P. 2002(b). The notice "shall be addressed as such entity or an authorized agent has directed in its last request filed in the particular case," or, if the creditor has not filed such a request, to "the address shown on the list of creditors or schedule of liabilities, whichever is filed later." *Id*. 2002(g).

51. Here, the clerk of court gave notice by mail to the Respondent. Whatismore, the Respondent participated in this case through counsel.

52. Consequently, the Respondent received adequate notice of the plan, and its failure to object translates acceptance of the plan.

53. Subsequently, the Respondent performed with willful disregard of the confirmed plan as opposed to accepting the transfer of ownership, resulting in severe injury to the Movant.

**II.     The Respondent willfully violated this Court's Order of Discharge**

54. This Court's Order of Discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect,

recover or offset … as a personal liability of the debtor" any debt discharged under section 1328(a). 11 U.S.C. § 524(a)(2).

55. The purpose of this provision is reflected in the legislative history of the statute as follows:

The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts. This paragraph has been expanded … to cover any act to collect, such as dunning by telephone or letter, or indirectly through … harassment, threats of repossession and the like. The change is ... intended to ensure that once a debt is discharged, the debtor will not be pressured in any way to repay it.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 363-64 (1978); S. Rep. No. 959, 95th Cong., 2d Sess. 80 (1978).

56. The United States Supreme Court has described the protection which a debtor derives from the entry of a discharge order as one of the "[c]ritical features of every bankruptcy proceeding…." *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 363-64, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006).

57. The discharge accomplishes a fundamental objective of a consumer bankruptcy case – a "fresh start" that safeguards an individual debtor against pressure and harassment by a creditor seeking satisfaction of a pre-existing debt.

58. Thus, "when a discharge injunction is violated, a debtor is denied one of the primary benefits offered by the present bankruptcy system." *Mooney v. Green Tree Servicing, LLC*, 340 B.R. 351, 358 (Bankr. E.D. Tex. 2006).

59. In order to prove an actionable violation of the discharge injunction under 11 U.S.C. § 524(a), a plaintiff must establish by clear and convincing evidence that a defendant: (1) knew of the postdischarge injunction; and (2) intended the actions which violated the injunction.

60. The appropriate standard to apply to determine whether a violation of the post-discharge junction was willful is for the court to focus not on the subjective intent of the alleged violators, but rather on whether their conduct complied with the discharge order.

61. Notice of this Court's Order of Discharge was sent to Respondent by the Bankruptcy Noticing Center on August 2, 2017.

62. Accordingly, Respondent knew of Movant's post-discharge injunction when taking action to collect on Movant's Loan.

63. The transmittal of no less than eleven (11) separate demands for payment by the Respondent to the Movant in the post-discharge period constitute action(s) by the Respondent to collect a debt as a personal liability of the Movant, and willful violation(s) of the post-discharge injunction.

**RELIEF REQUESTED**

WHEREFORE, the Movant requests the following relief:

A.     find that the Respondent willfully violated this Court's Order Confirming Plan;

B.     find that the Respondent willfully violated this Court's Order of Discharge;

C.     compel the Respondent to modify and realign Respondent's loan file to conform to the Movant's confirmed Chapter 13 Plan;

D.     enjoin the Respondent from committing future violation(s) of this Court's Order Confirming Plan;

E.     enjoin the Respondent from committing future violation(s) of this Court's Order of Discharge;

F.     award actual, and punitive damages, and costs and attorneys' fees; and

G.     award any other relief deemed appropriate and equitable.

Dated: October 15, 2018                                                  Respectfully submitted,

*/s/ Joseph Scott Davidson*

Joseph Scott Davidson
Mohammed Omar Badwan
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
+1 630-575-8181
jdavidson@sulaimanlaw.com
mbadwan@sulaimanlaw.com

*Counsel for Bradley Blaine Sandona*